UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

KENTARKIUS JAMEL MORGAN,

        Plaintiff,

v.                                              Case No. 3:19-cv-384-BJD-MCR

OFFICER THORTON, et al.,

        Defendants.
_____

## ORDER

### I. Status

Plaintiff, Kentarkius Jamel Morgan, an inmate of the Florida Department of Corrections (FDOC), is proceeding pro se on a civil rights complaint under 42 U.S.C. § 1983 (Doc. 1; Compl.) against five corrections officers who worked for Suwannee Correctional Institution (SCI) at the relevant times. Plaintiff alleges Defendants violated his Eighth Amendment right to be free from the infliction of cruel and unusual punishment or the use of excessive force. See Compl. at 5. As relief, he seeks compensatory damages. Id. at 6-7. Before the Court is Defendants' motion for partial summary judgment (Doc. 43; Motion), which Plaintiff opposes (Doc. 52; Pl. Resp.).

## II. Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is genuine when the evidence is such that a reasonable jury could return a verdict in favor of the nonmovant. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (quoting Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 919 (11th Cir. 1993)). "[A] mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat a motion for summary judgment." Kesinger ex rel. Estate of Kesinger v. Herrington, 381 F.3d 1243, 1247 (11th Cir. 2004) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

The party seeking summary judgment bears the initial burden of demonstrating to the court, by reference to the record, that there are no genuine issues of material fact to be determined at trial. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). The record to be considered on a motion for summary judgment may include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

When the moving party has discharged its burden, the non-moving party must point to evidence in the record to demonstrate a genuine dispute of material fact. Id. Substantive law determines the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. In determining whether summary judgment is appropriate, a court "must view all evidence and make all reasonable inferences in favor of the party opposing [the motion]." Haves v. City of Miami, 52 F.3d 918, 921 (11th Cir. 1995) (citing Dibrell Bros. Int'l, S.A. v. Banca Nazionale Del Lavoro, 38 F.3d 1571, 1578 (11th Cir. 1994)).

### III. Plaintiff's Allegations

In his complaint, which is verified under penalty of perjury,[1] Plaintiff asserts Defendants either beat him or allowed inmates to beat him on three separate occasions.[2] See Compl. at 5-6. First, Plaintiff alleges that, on November 8, 2017, Defendant Thorton failed to protect him when other

---

[1] The factual assertions a plaintiff makes in a verified complaint satisfy "Rule 56's requirements for affidavits and sworn declarations" and are therefore given the same weight as factual statements made in an affidavit. Stallworth v. Tyson, 578 F. App'x 948, 950 (11th Cir. 2014).

[2] In his response, Plaintiff lists Mark Inch, the Secretary of the FDOC, as one of the Defendants. See Pl. Resp. at 2. Secretary Inch is not a named party in this action; Plaintiff did not list him as a Defendant in the complaint. See Compl. at 3-4 (identification of Defendants).

inmates attacked him, using homemade weapons. Id. Instead of protecting Plaintiff from the other inmates, Defendant Thorton allegedly slammed Plaintiff to the ground, breaking his jaw. Id. at 6. Plaintiff alleges Defendant Dimaurio[3] then "appeared and started kicking [him] in [his] jaw while Defendant Thorton was on top of [his] back calling him derogatory names" because of his sexual orientation. Id.

The second alleged incident occurred on March 12, 2018. Plaintiff alleges Defendants Thorton and Dimaurio "retaliated against [him] for filing [an] administrative complaint and once again assaulted [him]." Id. Plaintiff does not explain the circumstances of the March 12, 2018 assault or indicate whether he sustained any injuries. Id. However, in his response to Defendants' motion and in a supporting declaration (Doc. 52-1; Pl. Ex.), Plaintiff expounds. He says he was transferred to the Regional Medical Center after the November 2017 incident because he required extensive medical treatment, including reconstructive oral surgery. See Pl. Resp. at 5-6; Pl. Ex. at 7-8. Plaintiff alleges he returned to SCI on March 12, 2018, at which time Defendants Thorton and Dimaurio threatened him because of his sexual orientation. See Pl. Resp. at 6;

---

[3] In their motion, Defendants spell this Defendant's last name as "Dimauro." See Motion at 1. The Court will continue to spell this Defendant's name as Plaintiff does so in his complaint and as it appears on the docket: "Dimaurio."

4

Pl. Ex. at 8. Defendant Dimaurio then began to "strike [Plaintiff] repeatedly while [he was] still in hand [and] leg restraints." See Pl. Resp. at 6.

The final alleged incident occurred on May 15, 2018, inside Plaintiff's cell. See Compl. at 6. Plaintiff alleges Defendants Pope-Jones, Lynn, and Deloach allowed another inmate to enter his cell, despite Plaintiff having been on "house alone" status because of his sexual orientation. See id.; Pl. Resp. at 7.[4] Plaintiff asserts the other inmate, once inside his cell, immediately assaulted him while the officers watched. See Compl. at 6.

## IV. Analysis & Conclusions

Defendants invoke Eleventh Amendment immunity as to any damages claims against them in their official capacities, and they argue Plaintiff failed to exhaust his administrative remedies for the March and May 2018 incidents. See Motion at 6, 13.

### A. Eleventh Amendment Immunity

The Eleventh Amendment provides immunity from suit "[w]hen the action is in essence one for the recovery of money from the state." Zatler v. Wainwright, 802 F.2d 397, 400 (11th Cir. 1986) (per curium) (quoting Edelman v. Jordan, 415 U.S. 651 (1974)). Thus, when a plaintiff sues a state actor in his

---

[4] In his response, Plaintiff says Defendant Dimaurio also participated in the May 15, 2018 incident. See Pl. Resp. at 7.

5

official capacity, the state, as the "substantial party in interest," may invoke its sovereign immunity. Id.

In his response to Defendants' motion, Plaintiff does not address the Eleventh Amendment immunity argument. However, in his "prayer for relief," he contends he seeks compensatory damages from all Defendants "in their official capacities." See Pl. Resp. at 12. Because Plaintiff seeks solely monetary relief, Defendants' motion is due to be granted to the extent they are entitled to Eleventh Amendment immunity.

### B. Exhaustion

Defendants maintain Plaintiff did not exhaust his administrative remedies with respect to the March 12, 2018 and May 15, 2018 incidents. See Motion at 6. In support of their exhaustion defense, Defendants offer the declarations of two FDOC employees: Jennifer Butler (Doc. 43-1; Def. Ex. A), who is employed by SCI as a "custodian of records for inmate classification records"; and Lawanda Sanders (Doc. 43-2; Def. Ex. B), who is an Operation Analyst I for central office in Tallahassee, Florida. See Def. Ex. A ¶ 1; Def. Ex. B ¶ 1. Defendants conclude, based on these declarations, that "Plaintiff failed to file any informal [or] formal grievances at the institution level and . . . at FD[O]C's Bureau of Policy Management and Inmate Appeals," complaining of the March or May 2018 incidents. See Motion at 6-7. They concede Plaintiff

6

exhausted his administrative remedies for the November 2017 incident. Id. at 13-14.

Exhaustion is a matter in abatement and should be raised in a motion to dismiss. See Bryant v. Rich, 530 F.3d 1368, 1374-75 (11th Cir. 2008). As such, when a defendant raises exhaustion in a motion for summary judgment, the court should treat the defense as if raised in a motion to dismiss. Id. See also Maldonado v. Unnamed Defendant, 648 F. App'x 939, 951 (11th Cir. 2016) ("We treat an exhaustion defense raised in a motion for summary judgment as an unenumerated Rule 12(b) motion to dismiss."). Accordingly, the Court treats Defendants' exhaustion defense as if raised in a motion to dismiss.

The Prison Litigation Reform Act (PLRA) provides, "No action shall be brought with respect to prison conditions . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion of available administrative remedies is "a precondition to an adjudication on the merits." Bryant, 530 F.3d at 1374. See also Jones v. Bock, 549 U.S. 199, 211 (2007). While "the PLRA exhaustion requirement is not jurisdictional[,]" Woodford v. Ngo, 548 U.S. 81, 101 (2006), "exhaustion is mandatory . . . and unexhausted claims cannot be brought," Pavao v. Sims, 679 F. App'x 819, 823 (11th Cir. 2017) (per curiam) (citing Jones, 549 U.S. at 211). Nevertheless,

prisoners are not required to "specially plead or demonstrate exhaustion in their complaints." See Jones, 549 U.S. at 216.

Not only is there a recognized exhaustion requirement, "the PLRA . . . requires proper exhaustion" as set forth in applicable administrative rules and policies. Woodford, 548 U.S. at 93. Generally, to properly exhaust administrative remedies, a Florida prisoner must complete a three-step process as fully set forth in the Florida Administrative Code (FAC). See Fla. Admin. Code rr. 33-103.005 through 33-103.007. First, a prisoner must file an informal grievance. See Fla. Admin. Code r. 33-103.005. If the informal grievance is denied, the prisoner must proceed to the second step by filing a formal grievance at the institution level. See Fla. Admin. Code r. 33-103.006. Finally, if the formal grievance is denied, the prisoner must proceed to the third step—an appeal to the Office of the Secretary of the FDOC. See Fla. Admin. Code r. 33-103.007.

> Courts confronted with an exhaustion defense employ a two-step process:
>
>> First, district courts look to the factual allegations in the motion to dismiss and those in the prisoner's response and accept the prisoner's view of the facts as true. The court should dismiss if the facts as stated by the prisoner show a failure to exhaust. Second, if dismissal is not warranted on the prisoner's view of the facts, the court makes specific findings to resolve disputes of fact, and should dismiss if, based on those findings, defendants have shown a failure to exhaust.

8

Whatley v. Warden, Ware State Prison, 802 F.3d 1205, 1209 (11th Cir. 2015) (internal citations omitted) (citing Turner v. Burnside, 541 F.3d 1077, 1082-83 (11th Cir. 2008)).

Under the first step of the Turner analysis, the Court cannot conclude Plaintiff failed to exhaust his administrative remedies because Plaintiff contends in both his complaint and his response to Defendants' motion that he exhausted his administrative remedies for all incidents. See Compl. at 6; Pl. Resp. at 9-11. Accepting Plaintiff's allegations as true, the Court proceeds to the second Turner step.

### i. March 2018 Incident

With his response, Plaintiff includes grievance documents. See Pl. Ex. 10-18. None reference the March incident. However, Plaintiff maintains he "filed" an informal grievance complaining about the March 12, 2018 incident involving Defendants Thorton and Dimaurio, but the grievance was "unacknowledged, and / or unreturned," see Pl. Resp. at 9, or "censored and disposed of by [SCI] staff, in an attempt to keep the incident concealed" see Pl. Ex. at 8.

Even accepting as true that Plaintiff submitted the March grievance but did not receive a response, he does not contend or offer evidence showing he attempted to re-initiate the three-step grievance process or proceed to the

9

second step, which he would have been permitted to do once the institution's time to respond to his informal grievance had expired. See Fla. Admin. Code r. 33-103.011(4) ("[E]xpiration of a time limit at any step in the process shall entitle the complainant to proceed to the next step of the grievance process."). Had Plaintiff submitted the March 12, 2018 grievance, Plaintiff did not properly exhaust his administrative remedies because the grievance was not approved, and Plaintiff did not complete the three-step grievance process.

### ii. May 2018 Incident

Unlike the March incident, Plaintiff does provide evidence showing he submitted an informal grievance complaining about the May 15, 2018 incident. See Pl. Ex. at 10. In a grievance submitted the day of the incident, Plaintiff complained that "staff on duty" placed another inmate in his cell knowing the "repercussions" that would follow—an assault. Id. An employee approved Plaintiff's grievance, responding, "You are currently housed alone." Id. Because the grievance was approved, there was nothing more for Plaintiff to do. In other words, he did not have to proceed to the second step of the grievance process under the FAC because his grievance was not denied, and he received a timely response.

The May grievance was not overly detailed. For instance, Plaintiff did not identify Defendants by name, but the PLRA does not mandate "a name all

10

defendants requirement." Jones, 549 U.S. at 217 (internal quotation marks omitted). See also Parzyck v. Prison Health Servs., 627 F.3d 1215, 1218 (11th Cir. 2010) ("A prisoner need not name any particular defendant in a grievance in order to properly exhaust his claim."). Additionally, Plaintiff did not report that officers intentionally coordinated the attack or watched it. However, a liberal reading of Plaintiff's grievance permits such an inference, especially given Plaintiff was supposed to be housed alone at the time, as the grievance-responder acknowledged. See Pl. Ex. at 10.

Plaintiff also did not indicate on what date the incident occurred, but there is no rule mandating a prisoner include the date of an alleged incident to properly grieve it. Moreover, Plaintiff's grievance was not returned to him without action for an alleged failure to provide enough information. See id. Upon review, Plaintiff provided enough information to put the institution on notice that staff members intentionally allowed another inmate to enter Plaintiff's cell to harm him. Accordingly, he properly grieved the May 15, 2018 incident.

Accordingly, it is now

**ORDERED:**

1.    Defendants' construed motion to dismiss (Doc. 43) is **GRANTED in part** only to the extent Plaintiff's Eighth Amendment claims against

11

Defendants Thorton and Dimaurio for their alleged conduct on March 12, 2018, are **dismissed**. In all other respects, Defendants' construed motion to dismiss is **DENIED**. Thus, Plaintiff's claims arising out of the November 2017 and May 2018 incidents will proceed.

  2. Defendants' motion for partial summary judgment (Doc. 43) is **GRANTED** only to the extent Defendants are entitled to Eleventh Amendment immunity as to any damages claims against them in their official capacities.

  3. This case is in a posture to proceed to settlement conference and, if settlement negotiations fail, to trial. Accordingly, this case is **REFERRED** to the Jacksonville Division Civil Pro Bono Appointment Program so the designated deputy clerk of the Court may seek counsel to represent Plaintiff.

  **DONE AND ORDERED** at Jacksonville, Florida, this 2nd day of March 2021.

           _____
           BRIAN J. DAVIS
           United States District Judge

Jax-6 3/1
c:
Kentarkius Jamel Morgan
Counsel of Record